UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOYS "R" US, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>COLONY NATIONAL INSURANCE<br>COMPANY,<br><br>        Defendant. | CIVIL ACTION NO. _____<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT AND BAD FAITH**

Plaintiff Toys "R" Us, Inc. ("TRU"), for its complaint against defendant Colony National Insurance Company ("Colony"), upon knowledge as to its own acts and upon information and belief as to the acts and omissions of others, alleges as follows:

**NATURE OF ACTION**

1.      This is an action for declaratory judgment, breach of contract and extra-contractual damages on account of Colony's breach of the implied covenant of good faith and fair dealing in connection with excess liability insurance policy No. AR3460247 (for the policy period April 9, 2006 to April 9, 2007) issued by Colony Insurance Company ("Colony") (the "Colony Policy").  A true and correct copy of the Colony Policy is attached hereto as Exhibit 1.

2.      By this action, TRU seeks monetary damages in excess of $24.6 million resulting from Colony's failure to provide coverage for and indemnify TRU in connection with a wrongful death action.  That action, styled as Michael Aleo v. Toys "R" Us, Inc., et al., Civil Action No. 08-02149-A (Mass. Sup. Ct. Nov. 9, 2011) (the "Aleo Action"), resulted from an accident

1

involving an inflatable slide manufactured and sold to TRU by SLB Toys USA, d/b/a Toy Quest ("SLB"), and Manley Toys, Ltd. (collectively, "Manley").  Such damages include the $24.6 million that TRU paid to satisfy the judgment entered against TRU in the Aleo Action (the "Aleo Judgment"), net of any payments made by Manley's primary insurer Liberty Surplus Insurance Corporation ("Liberty").

3.       TRU further seeks damages resulting from Colony's breach of the covenant of good faith and fair dealing in connection with the Aleo Action.

4.       TRU further seeks a declaration that TRU was entitled to coverage for the Aleo Action under the Colony Policy, both as an additional insured and as an indemnitee of SLB and Manley Toy, Ltd., the named insureds under the Colony Policy.

**THE PARTIES**

5.       Plaintiff TRU is a corporation organized and existing under the laws of Delaware with its principal place of business in Wayne, New Jersey.

6.       Defendant Colony is an insurance company organized under the laws of the Commonwealth of Virginia, with its principal place of business in Virginia.

**JURISDICTION AND VENUE**

7.       The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332.  TRU and Colony are citizens of different states and the amount in controversy, exclusive of interests in costs, exceeds the sum of $75,000.

**THE ALEO ACTION**

8.       On or about October 20, 2008, TRU received notice from Amazon.com, Inc. ("Amazon"), TRU's former website provider, that Robin Aleo ("Ms. Aleo") was fatally injured on or about July 29, 2006 while using a product called a "Banzai Falls In-Ground Pool Slide"

2

("Banzai Slide").  Attached to Amazon's notice to TRU was a demand to SLB and Amazon from counsel representing Ms. Aleo's estate.

9.      TRU did not design or manufacture the Banzai Slide.  Instead, TRU purchased the Banzai Slide from Manley pursuant to the terms of a Master Purchase Order Agreement ("Master Agreement") with TRU.  Manley designed and manufactured the Banzai Slide and then sold it to TRU for sale to retail customers.

10.      Manley designs, manufactures and sells a variety of products, including water slides, selling its products to retailers, such as TRU, for sale to retail customers.  For many years, TRU has purchased and sold Manley-manufactured products at its stores and on-line.

11.      The Banzai Slide on which Ms. Aleo was fatally injured was purchased from TRU through the Amazon website platform.  Because TRU was the seller of this particular Banzai Slide, Amazon tendered the demand to TRU for indemnification and defense pursuant to a separate agreement between Amazon and TRU.

12.      On October 20, 2008, TRU provided Manley's CEO, Samson Chan, with the demand letter from counsel representing Ms. Aleo's estate, as well as a copy of Amazon's demand letter to TRU.  TRU informed Manley that it expected Manley to indemnify, defend and hold TRU harmless against any and all liabilities, claims, costs or damages arising from this matter, as required under the Master Agreement.

13.      Under the Master Agreement, Manley agreed to include TRU as an additional insured under the general liability coverage issued to Manley, as follows:

> Seller [i.e., Manley] shall maintain in force for a period of at least two (2) years from the date of the Order, for the mutual benefit of itself, [TRU] and [TRU's] Indemnitees, general liability insurance, including product liability/completed operations insurance and contractual liability insurance coverage on an occurrence basis in an amount of at least $3,000,000.00, providing for the investigation, defense and satisfaction (by settlement or otherwise) at no cost to [TRU], of any liability, claim, loss, expense or fee asserted

against or incurred by [TRU]. Within thirty (30) days after the acceptance by Seiler of an Order pursuant to Paragraph 2 above, Seller shall cause the insurance company issuing such policy to Issue a Certificate of Insurance to Buyer confirming that such policy has been Issued and is in full force and effect and provides coverage to [TRU] Buyer and [TRU's] indemnitees as an additional insured ….

Master Agreement, paragraph 12.  A copy of the Master Agreement is attached hereto as Exhibit 2.

14.     Manley provided TRU with what Manley represented to be current and effective Evidence of Insurance, purportedly showing TRU as the "Certificate Holder," and Manley Toy, Ltd., Manley Toys, Ltd. and SLB Toys USA, Inc. as the insureds.  The Evidence of Insurance showed that Manley had procured a general liability policy with Liberty Surplus Insurance Corporation with $1 million occurrence limit and a $2 million general aggregate limit.  It also showed that Manley had procured an excess/umbrella liability policy from Colony with $4 million occurrence and aggregate limits.

15.     Manley has represented that both of these policies were effective from April 9, 2006 to April 9, 2007, which period encompassed the time period of the incident in the Aleo Action.

16.     On October 22, 2008, Brian Dubinsky, on behalf of Manley, wrote to TRU stating that "[w]e will tender this claim immediately to our carrier."  Liberty acknowledged receipt on or about October 29, 2008.

17.     On or about October 31, 2008, Michael Aleo, individually and as Administrator of the Estate of Robin Aleo ("Aleo Estate") filed the Aleo Action against SLB and Amazon in the Superior Court of the Commonwealth of Massachusetts.  The complaint in the Aleo Action was thereafter amended to add TRU as a defendant, alleging that TRU was the actual seller of the Banzai Slide through its previous partnership with Amazon.

4

18.     The Aleo Estate alleged that the Banzai Slide on which Ms. Aleo was fatally injured was negligently designed, manufactured and sold, that it failed to comply with applicable regulations promulgated by the Consumer Product Safety Commission, and that it lacked adequate instructions and/or warnings concerning its use, causing Ms. Aleo's injuries and death. The Aleo Estate asserted causes of action against each of the defendants for negligence, breach of warranty, unfair and deceptive trade practices and punitive damages.

19.     Upon being served with the amended complaint in the Aleo Action, TRU promptly notified Manley.

20.     Manley's insurer Liberty formally accepted tender of the indemnification and defense of TRU in the Aleo Action on December 5, 2008.

21.     Unlike Liberty, Colony did not acknowledge coverage to TRU under the Colony Policy.  Instead, nearly three years after the Aleo Action was commenced and Liberty accepted TRU's tender of defense and indemnification, Colony asserted that the "Manley" it agreed to insure was SLB, a U.S. company – but not the "Manley" headquartered in Hong Kong ("Manley HK") from whom TRU actually purchased the Banzai Slide, such that TRU did not qualify as an insured and thus was not entitled to coverage under the Colony Policy.

22.     Colony made these assertions even though CRC Insurance Services, Inc., an authorized insurance representative acting on behalf of Colony, advised Colony's underwriter (Argonaut Specialty) that Manley conducted manufacturing operations in Hong Kong and that toys manufactured in Manley's Hong Kong location were distributed worldwide:

> Manley Toy Ltd. is a US distributor of toys, located in California.  The toys are designed and manufactured at the insured's Hong Kong location but distributed worldwide.

A copy of the foregoing correspondence is attached hereto as Exhibit 3.

23.     Furthermore, on February 17, 2011, almost 9 months before judgment in the Aleo Action was entered, but well after it was notified of the Aleo Action, Colony brought a lawsuit against Manley, Manley HK and SLB in the United Stated District Court for the Northern District of Illinois, styled as Colony National Insurance Company v. SLB Toys USA, Inc. and Manley Toys, LTD, et al., Civil Action No. 1:11-cv-01121 (the "Colony Action"). The Colony Action was later transferred to the United States District Court for the Central District of California.

24.     In the Colony Action, Colony alleged that the insurance policies it issued to Manley from 2005 to 2010 – including the policy providing coverage to TRU and providing coverage for the Aleo Action – should be rescinded because they had been procured by the misrepresentations of Manley, Samson Chan, Brian Dubinsky and other Manley affiliates.

25.     While the Colony Action was pending, both SLB and Amazon settled with the Aleo Estate shortly before trial, leaving TRU as the sole defendant to stand trial in the Aleo Action.   Under that settlement, in exchange for a dismissal of all causes of action asserted against SLB and Amazon, Liberty paid one third of the limit of the Liberty Policy for SLB and Amazon respectively, which amounted to $667,000 (thus leaving only the remaining $333,000 in policy limits available to TRU to satisfy the Aleo Judgment), while Colony paid only 20%, or $800,000, of its $4 million policy limit.

26.     In breach of its duty to exercise good faith in attempting to settle the Aleo Action on behalf of TRU, unlike Liberty, Colony never offered or made available its policy limit to settle the Aleo Action.

27.     On or about November 9, 2011, after a trial and jury verdict in the Aleo Action, a judgment was entered against TRU and in favor of the Aleo Estate on certain counts. The jury

awarded the Aleo Estate $2,640,000 in compensatory damages, plus statutory interest, together with $18 million in punitive damages against TRU, such that the judgment entered against TRU exceeded $20 million, exclusive of interest.

28.     TRU appealed the Aleo Judgment to the Supreme Judicial Court of Massachusetts; by an order and opinion dated September 13, 2013, the Supreme Judicial Court upheld the Aleo Judgment.  Inclusive of post judgment interest, the amount of the Aleo Judgment totaled $24,612,110.40, which sum TRU paid on October 11, 2013.

29.     Meanwhile, on August 23, 2012, Manley's Manager, Chan Siu Lun, signed a declaration in a separate lawsuit in which he asserted that the Colony Policy issued for the benefit of TRU and providing coverage for the Aleo Action was rescinded *ab initio* on May 15, 2012 in relation to a confidential settlement agreement, to which TRU was not a party, in the Colony Action.

30.     Despite owing TRU a coverage obligation for the Aleo Action, Colony never notified TRU that it intended to enter into an agreement with Manley to attempt to effectuate a rescission of the Colony Policy.  Nor did either Colony or Manley ever advise TRU of their negotiations concerning a purported rescission of insurance policies that were procured, in part, for the benefit of TRU.  Instead, it was not until at or near the time of the filing of the declaration of Chan Siu Lun that TRU learned that Colony entered an agreement purporting to rescind the very Colony Policy procured for the benefit of TRU, and providing coverage for the Aleo Action.

## THE COLONY POLICY

31.     The Colony Policy identified SLB, Toy Quest Limited, and Manley as named insureds to the Colony Policy.

32.     The Colony Policy provides its named insureds an additional $4 million coverage per occurrence and in the aggregate in excess of the Liberty Policy.

33.     Under the Colony Policy, Colony is obligated to pay those sums that the insured becomes obligated to pay as damages in excess of the applicable limits of the underlying primary Liberty commercial general liability insurance.

34.     In addition, the Colony Policy provides that the terms and conditions of the Colony Policy follow the form of the underlying Liberty Policy in effect at the inception of the Colony Policy except as specifically set forth in the Colony Policy and any endorsement attached thereto.

35.     The underlying Liberty Policy (policy number DGL-SF-184739-016 for the policy period April 9, 2006 to April 9, 2007) lists SLB, Toy Quest Limited, and Manley as named insureds, and provides a $1 million occurrence limit and a $2 million general aggregate limit.  A copy of the Liberty Policy is attached hereto as Exhibit 4.

36.     The Liberty Policy provides insurance coverage for all sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage," and Liberty is obligated to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage."

37.     The Liberty Policy defines "bodily injury" to mean bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time, that occurs during the policy period, and it defines "damages" because of "bodily injury" to include damages

claimed by any person or organization for care, loss of services or death resulting at any time from such "bodily injury."

38.　　Endorsement 6 of the Liberty policy, entitled "Additional Insured —By Written Contract" provides that the Liberty Policy is "amended to include as an insured any person or organization with whom you have agreed to add as an additional insured by written contract …."

39.　　In addition, the Additional Insured – Vendors endorsement to the Liberty Policy includes as an additional insured "any person or organization (referred to above as vendor) shown in the Schedule…with respect to 'bodily injury' or 'property damage' arising out of '[Manley's] products' shown in the Schedule which are distributed or sold in the regular course of the vendor's business."

40.　　The "Schedule" in the Additional Insured – Vendors endorsement to the Liberty Policy provides that the Vendors to be added as insureds are those Vendors "per written contract."  Accordingly, given that under the Master Agreement TRU is one of Manley's vendors, TRU qualifies as an additional insured under the Additional Insured – Vendors endorsement to the Liberty Policy.

41.　　Furthermore, under the Liberty Policy, Liberty agreed to defend an indemnitee of the insured to the extent such indemnitee is also named as a party to the suit that Liberty is defending on behalf of an insured, provided that "[t]he 'suit' against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an 'insured contract.'"

42.　　The Liberty Policy defines an "insured contract" to include a contract or agreement "pertaining to [Manley's] business … under which [Manley] assume[s] the tort

liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."

43. Under the Master Agreement, Manley agreed to assume the tort liability for bodily injury or property damage, and to "defend, indemnify and hold harmless [TRU], its affiliates … against any and all alleged, actual or threatened liabilities, damages, claims, suits, actions, losses, costs and expenses, including reasonable attorneys' fees, arising out of or alleged to have arisen from a breach of any of the representations, warranties or obligations of [Manley] … including but not limited to … products liability actions …."  Accordingly, under the Master Agreement, (i) Manley agreed to maintain insurance for TRU's benefit, and (ii) TRU is entitled to indemnification from and is an indemnitee of Manley.  Therefore TRU thus qualifies as an additional insured under the Liberty Policy and is entitled to a defense to the Aleo Action under the Liberty Policy.

44. Given that the Colony Policy provides that the terms and conditions of the Colony Policy follow the form of the underlying Liberty Policy, under the Colony Policy TRU likewise qualified as an additional insured and was entitled to having Colony provide coverage for TRU in connection with the Aleo Action.

**CAUSES OF ACTION**
**COUNT I**
**(Breach of Contract)**

45. TRU repeats and incorporates by reference the allegations contained in Paragraphs 1 through 44 above as though fully set forth herein.

46. TRU was an additional insured under the Liberty Policy, and the Master Agreement between TRU and Manley constituted an insured contract that triggered Colony's contractual obligations to TRU.

10

47.     Manley's assumption of liability under the Master Agreement, together with TRU having been sued along with SLB (a named insured under the Colony Policy) in the Aleo Action, obligated Colony to provide coverage to TRU for the Aleo Action as an indemnitee to Manley.

48.     Based on the foregoing, Colony has breached or otherwise repudiated its contractual obligations to TRU by its failure or refusal to acknowledge, fully to accept or fully to undertake its obligations to pay or reimburse, or to arrange for the payment or reimbursement in full of TRU's costs of satisfying the Aleo Judgment, as described above.

49.     As a direct and proximate result of Colony's breach of contract, which is continuing to at least the date of this complaint, Colony has deprived TRU of the benefits of the Colony Policy.

50.     As a direct and proximate result of Colony's having breached and failed to honor its insuring obligations to TRU under the Colony Policy, TRU has sustained damages in excess of the $4 million policy limit of the Colony Policy and in fact in an amount in excess of $24,000,000.  TRU also is entitled to all other direct, indirect, consequential, special and compensatory damages as a result of Colony's breach of contract.

## <u>COUNT II</u>

### **(Breach of Covenant of Good Faith and Fair Dealing)**

51.     TRU repeats and incorporates by reference the allegations contained in Paragraphs 1 through 50 above as though fully set forth herein, and further alleges as follows.

52.     By its actions and omissions, Colony has breached the covenant of good faith and fair dealing in at least the following ways with respect to TRU, the Aleo Action and Aleo Judgment:

- By failing and refusing to offer the full policy limit of the Colony Policy in fulfillment of its affirmative duty to attempt to settle the Aleo Action on behalf of TRU;

- By forcing TRU to institute litigation to recover amounts due under the Colony Policy for the Aleo Action, including the Aleo Judgment;

- Together with Manley, by surreptitiously negotiating a rescission of the coverage procured for TRU's benefit and responsive to the Aleo Action and Aleo Judgment without TRU's knowledge or consent;

- By wrongfully depriving TRU of the benefits of the insurance coverage under the Colony Policy to which TRU was entitled based on a panoply of erroneous "coverage defenses," including that neither TRU nor the manufacturer of the Banzai Slide was an insured under the Colony Policy, and that TRU's notice of the Aleo Action under the Colony Policy was not timely; and

- Failing and refusing to perform known insuring obligations.

53.     By the actions alleged herein, Colony deliberately, systematically, and repeatedly violated its duty of good faith and fair dealing.

54.     Colony's conduct was and is undertaken solely to avoid required payments under the Colony Policy and to protect its own pecuniary interests at the expense of TRU's interests, and in violation of TRU's known rights.

55.     TRU is entitled to the proceeds of the Colony Policy, and in light of the foregoing, and otherwise, Colony is consequently obligated to pay for TRU's losses above and beyond the policy limits related to the Aleo Action, including the Aleo Judgment, irrespective of

any allegation that any such policy has a limit of liability, per occurrence, aggregate or otherwise.

56.     In light of the foregoing, and otherwise, Colony may not enforce or attempt to enforce against TRU any purported contractual obligation, limitation or exclusion set forth in the Colony Policy or any contractual term or condition allegedly running in its favor.

57.     As a direct and natural consequence of the above breaches, TRU is entitled to money damages in an amount to be proven at trial, punitive or exemplary damages in an amount sufficient to deter future violations by Colony and others, TRU's attorney's fees and costs of this action and interest and damages, in an amount to be determined at trial.

## COUNT III
### (Estoppel)

58.     TRU repeats and incorporates by reference the allegations contained in Paragraphs 1 through 57 above as though fully set forth herein.

59.     TRU timely provided Manley, and consequently Colony, with notice of the Aleo Action and demanded that Colony perform its obligations under the Colony Policy, including, without limitation, paying the Aleo Judgment, together with any other damages on account of a settlement or judgment in the Aleo Action.

60.     In breach of its contractual obligations, Colony deprived TRU of the benefits of the insurance coverage under the Colony Policy to which TRU was entitled based on its assertions that the manufacturer of the Banzai Slide was not an insured under the Colony Policy, and/or that TRU's notice to Colony of the Aleo Action was not timely.

61.     Furthermore, despite knowing full well of the pendency of the Aleo Action against TRU, and TRU's demands for coverage under the Colony Policy therefor, Colony sought and obtained rescission of the Colony Policy without TRU's knowledge or consent.

13

62.     By reason of its surreptitious rescission of the Colony Policy and its wrongfully having deprived TRU the benefits of the Colony Policy in breach of its contractual obligations, Colony is estopped from asserting that either the purported rescission of the Colony Policy, or any of the conditions or exclusions in the Colony Policy, including without limitation that the manufacturer of the Banzai Slide was not an insured under the Colony Policy, allow it to avoid covering the damages incurred by TRU on account of the Aleo Action, including the Aleo Judgment and/or any subsequent settlement.

<u>**COUNT IV**</u>
**(Declaratory Judgment)**

63.     TRU repeats and incorporates by reference the allegations contained in Paragraphs 1 through 62 above as though fully set forth herein.  This count is brought pursuant to 28 U.S.C. § 2201.

64.     Despite direct evidence that the manufacturer of the Banzai Slide was an insured under the Colony Policy, such that TRU consequently qualified as an additional insured under the Colony Policy, and that TRU is an indemnitee of Manley, Colony has refused to acknowledge TRU's entitlement to coverage for the Aleo Action and TRU's status as an additional insured under the Colony Policy.

65.      Likewise, as a further basis to refuse to honor its insurance obligations to TRU, Colony has asserted a panoply of erroneous "coverage defenses," including that TRU did not give timely notice of the Aleo Action, despite TRU's timely notice to Manley of the Aleo Action, Liberty's acknowledgement of that notice, and Colony's awareness of the pendency of the Aleo Action against TRU.

66.     Furthermore, without TRU's knowledge or consent, Colony has attempted to rescind and render "void ab initio" the very coverage that was procured for TRU's benefit and that should have provided coverage to TRU for the Aleo Action and Aleo Judgment.

67.     An actual and justiciable controversy presently exists between TRU and Colony concerning TRU's status as an additional insured under the Colony Policy, the effectiveness of the purported rescission of the Colony Policy as respects TRU, and TRU's entitlement to coverage under the Colony Policy for the Aleo Action.

## PRAYER FOR RELIEF

**WHEREFORE**, TRU demands judgment in its favor and against Colony and relief as follows:

- TRU's damages according to proof at trial, including all incidental, consequential and statutory damages proximately resulting from Colony's breaches of contract, and all other appropriate relief, including TRU's attorneys' fees in bringing and pursuing this action, pre-judgment and post-judgment interest and any other further relief to which it is entitled;

- TRU's money damages in an amount to be proven at trial, including all incidental, consequential and any other applicable damages proximately resulting from Colony's breaches of the covenant of good faith and fair dealing, and all other appropriate relief, including TRU's attorneys' fees in bringing and pursuing this action, pre-judgment and post-judgment interest and any other further relief to which it is entitled;

- Entry of a declaration and order pursuant to 28 U.S.C. § 2201 that TRU is both an indemnitee of Manley and qualifies as an additional insured under the Colony

Policy such that Colony is consequently obligated pursuant to the terms of the Colony Policy to indemnify TRU, and to pay all costs and expenses in full, arising from, or in connection with the Aleo Judgment;

- Entry of a declaration and order that pursuant to 28 U.S.C. § 2201, Colony deposit with the clerk of this Court cash or securities or file with such clerk a bond with good and sufficient securities, to be approved by the Court, in an amount to be fixed by the Court sufficient to secure the payment of any final judgment which may be rendered in this action;

- That this Court determine, declare, and order that Colony is obligated to pay in full TRU's legal liabilities, including without limitation all sums spent in settlement or in satisfying verdicts or judgments arising out of or in connection with the Aleo Action, including the Aleo Judgment;

- That this Court determine, declare, and order that Colony is obligated to pay in full TRU's legal liabilities, including without limitation all sums spent in settlement or in satisfying verdicts or judgments arising out of or in connection with Aleo Action, including the Aleo Judgment;

- That this Court determine, declare, and order that Colony is estopped from enforcing, and therefore may not enforce, against TRU any contractual term, obligation, limitation, or exclusion set forth in the Colony Policy;

- That this Court determine, declare, and order that Colony is estopped from asserting the purported rescission of the Colony Policy is effective as against TRU;

- Award TRU pre-judgment and post-judgment interest;

- Award TRU its costs and expenses, including but not limited to its attorneys' fees, in bringing and pursuing this action;

- Such orders, including injunctive relief, as are necessary to effectuate this Prayer for Relief or to preserve this Court's jurisdiction over the parties and issues herein; and

- Award TRU any other and further relief to which it is entitled.

### JURY DEMAND

TRU demands a trial by jury on all issues so triable.


TOYS "R" US, INC.
By its Attorneys,


*/s/ Lisa M. Campisi*
Lisa M. Campisi
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York  10178
Tel:212.309.6000
Fax:212.309.6001
lcampisi@morganlewis.com


Dated:  November  6, 2013

17